IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No.  06-73 GMS |
| | ) | |
| DION L. BARNARD, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

## I.    INTRODUCTION

On June 27, 2006, the Grand Jury for the District of Delaware indicted Dion L. Barnard

("Barnard") for distribution of over fifty grams of cocaine base, in violation of 21 U.S.C. §841

(a)(1) and (b)(1)(A).  (D.I. 12, 13.)  Now before the court is Barnard's Motion to Suppress

Evidence and Statements.[1]  (D.I. 23.)  The court held one evidentiary hearing in connection with

this motion on July 19, 2007 ("July hearing"), and a second on September 17, 2007 ("September

hearing").  The parties then submitted proposed findings of fact and conclusions of law.  (D.I.

38, 39.)[2]  The court has considered the testimony elicited during the July and the September

hearings and the arguments presented in the parties' submissions concerning the issues raised by

Barnard's motion.  The court concludes that the Delaware Department of Correction Probation

and Parole ("P&P") officers and the Drug Enforcement Agency ("DEA") agent and other DEA

Task Force members conducted a valid warrantless search of Barnard's residence.  The court

further concludes that Barnard consented to the DEA agent and officers' search, and the

residence's owner consented to the P&P officers' search.  The court also concludes that officers

---

[1] Barnard filed a consolidated motion seeking to suppress physical evidence and statements, to compel disclosure of the United States' confidential informant, and to allow defense testing/weighing of drug evidence. (D.I. 23.) Only the suppression issue remains before the court. (September 17, 2007, Hearing Tr. 78:24-79:09.)

[2] Barnard did not file a reply brief, although the stipulated briefing schedule provided for one. (D.I. 35.)

informed Barnard of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and that

Barnard knowingly and voluntarily waived those rights before making certain statements. The

court will therefore deny Barnard's motion for the following reasons.

## II.    FINDINGS OF FACT

At the July and September evidentiary hearings, the United States called four witnesses:

Carlo Pini ("Pini"), a Delaware P&P supervisor stationed in New Castle, Delaware (July Hearing

Transcript ("July Tr.") 10:01-20); Angela Latsko ("Latsko"), a Delaware P&P senior probation

officer (September Hearing Transcript ("Sept. Tr.") 6); Lawrence Collins ("Collins"), a

Delaware P&P officer assigned to the Drug Enforcement Administration ("DEA") Task Force

(Sept. Tr. 30); and Eric G. Miller ("Miller"), a DEA special agent.[3] (Sept. Tr. 61.) Barnard did

not call witnesses at either hearing. Thus, the testimony of the government witnesses is

undisputed. The following represents the court's essential findings of fact as required by Rule

12(d) of the Federal Rules of Criminal Procedure.

On April 28, 2006, a criminal complaint and accompanying federal arrest warrant were

issued against Barnard. (D.I. 7, 8.) The complaint alleged that Barnard had sold cocaine base to

a confidential informant ("CI") on January 12, 2006, and that DEA special agents and task force

officers had seen and recorded him doing so.[4] (D.I. 7, 8; Sept. Tr. 9, 21-22, 31; *id.* DX-1.)

Barnard had been on state probation and under Latsko's supervision since at least since March

14, 2006. (Sept. Tr. 7.) Latsko was his probation officer since that time. (*Id.*) Collins notified

Latsko of the outstanding warrant for Barnard's arrest and provided her with a copy of the

---

[3] The court will refer to DEA Special Agent Miller and DEA Task Force Officers collectively as "DEA officers" or "federal agents" for convenience.

[4] Collins and Miller attributed the delay between the January 2006 alleged drug sale and the April 2006 complaint's issuance to difficulties with determining the defendant's identify and to the departure of the original officer responsible for the case. (Sept. Tr. 44, 62.)

complaint. (Sept. Tr. 9, 21-22, 31.) Intending to effect his arrest, Latsko contacted Barnard and instructed him to come to her office on June 14, 2006. (Sept. Tr. 20-21.)

On that day, before Barnard's scheduled arrival, Latsko requested approval from Pini, her supervisor, to conduct an administrative search of Barnard's residence. (July Tr. 12-13, 18-19.) This request was based on the complaint, arrest warrant, and Latsko's understanding of Barnard's past involvement with illegal drugs. (July Tr. 12-13, 18-19.) Pini orally approved Latsko's request. (*Id.* at 19.) Pini completed the standard written approval form for the search the next day. (*Id.* at 12-13, 17-18.)

Barnard appeared as directed on June 14, 2006, and Latsko placed him under arrest pursuant to the warrant. (Sept. Tr. 8-9; D.I. 7, 8; Sept. DX-1.) She then notified Collins, who came to the P&P office with Miller and Michael Santos, a Newcastle County, Delaware, detective also assigned to the DEA Task Force. (*Id.* at 8-10, 32-33, 62-63.) Santos came because he was involved in an investigation into a woman's disappearance, about which Barnard had been previously questioned. (*Id.* at 38.) When they arrived, Collins, Miller, and Santos handcuffed Barnard and took him into federal custody. (*Id.* at 10, 33, 63.) After leaving the room briefly, Latsko returned and told Barnard, in front of Miller, Collins, and Santos, that P&P officers would conduct an administrative search of Barnard's residence at 431 Howell Drive, Collins Park, New Castle, Delaware. (*Id.* at 11-12, 27-28.) Miller then identified himself as a DEA agent and Collins and Santos as DEA task force officers. (*Id.* at 35, 63-64.) Miller asked Barnard if he, Collins, and Santos could search Barnard's room at 431 Howell. (*Id.* at 35, 63-64.) Miller did not advise Barnard, nor did Barnard ask, about the scope or the object of the search. (*Id.* at 63-64.) Barnard orally consented to Miller's request. (*Id.*)

While taking Barnard to the DEA officers' car, Miller read Barnard his *Miranda* warnings verbatim from Miller's DEA-13A card. (*Id.* at 36, 65.) Barnard acknowledged that he understood his rights. (*Id.*) Miller then asked Barnard if he was willing to answer any questions, and Barnard responded with a question of his own, asking Miller and Collins, "Who set me up?" (*Id.*)

Barnard was calm and cooperative. (*Id.* at 37-38, 67-68.) During the car ride to 431 Howell, Miller, Collins, and Santos questioned Barnard about the allegations in the complaint of January 12, 2006. (*Id.* at 37-38, 67-68.) Barnard denied any knowledge of the cocaine sale alleged to have occurred that day. (*Id.* at 37-38, 67-68.) Collins and Santos also questioned Barnard about Reesha Lewis, the woman whose disappearance was under investigation. (*Id.* at 38.) With respect to the missing woman, Barnard stated that Lewis had left her house with Barnard's car, that she had not returned, and that he did not know where she was. (*Id.* at 49-50.)

The group arrived at 431 Howell, and Miller and the P&P officers (Latsko, Fentress, Pini, and others) walked to the door. (*Id.* at 14, 28-29.) They were met by Dorinda Richardson, who, Latsko believed, owned the home. (*Id.*) The P&P officers requested Richardson's consent to search Barnard's room. (*Id.* at 29, 70.) Richardson consented and directed the officers through the house to the room. (*Id.*) While P&P officers began searching the room, Miller entered the room, briefly looked around, and then left. (*Id.* at 73.) Miller returned to the car, where Barnard was being detained, and asked him to sign a written consent form. (*Id.* at 41, 70-72.) Barnard declined to sign anything, but again consented verbally to the search of his room. (*Id.*) Miller later went back into Barnard's residence to check on the search's progress, stayed for a few minutes, and again returned to the car. (*Id.* at 71-72.) Barnard remained in the car during the

4

search. (*Id.* at 40-42.) At various times, he was accompanied by Miller, Santos, or Collins. (*Id.* at 40-42.)

While the search continued, Barnard told Collins that he could not have been at the site of the alleged drug sale because he had been working on the 12th of January. (*Id.* at 58.) Barnard told Collins that he would find work schedules or pay stubs near the television in Barnard's room confirming this fact. (*Id.* at 55-58.) Collins left the car and entered Barnard's room but did not find the described work stubs. (*Id.* at 55-56.) While there, the P&P officers presented Collins with what they had found during their search: approximately $2,300 cash, envelopes addressed to "Ross Money" and "Ross Cephas," photographs, keys to an automobile, and title to an automobile. (*Id.* at 55.) "Ross" was the nickname Barnard purportedly used during the alleged January 12 drug sale. (*Id.* at 41-42, 55.) The photographs were of Reesha Lewis, the woman whose disappearance was under investigation. (*Id.* at 41.) Collins took possession, while still in Barnard's bedroom, of all the items that the P&P officers had found. (*Id.* at 54-56.)

## III. CONCLUSIONS OF LAW

Barnard seeks to suppress admission of the physical evidence seized by the P&P and DEA special agent and task force officers on June 14, 2006, as well as any statements made during and after his arrest. (D.I. 23, 38.) Barnard makes three arguments in support of suppression: (1) because the P&P officer were looking for drugs, drug paraphernalia, and other contraband, the incriminating nature of the items actually seized was not immediately apparent; (2) the scope of Barnard's consent to the search was limited to a search for drugs and drug paraphernalia; and (3) the DEA agents used the P&P officers' authority to conduct an administrative search as a ruse to conduct an otherwise illegal search of Barnard's room. (D.I. 38.) In response, the government argues that the warrantless search of Barnard's room was legal

5

because both Barnard and Richardson consented to it. The government also claims that the P&P officers' search was a valid warrantless search of a probationer's residence based on reasonable suspicion. The government further contends that, even if the P&P officers' search and seizure were determined unconstitutional, the federal agents would have inevitably found the evidence during the course of a search to which Barnard consented. As to his statements, the government contends that the officers and agents took Barnard's statements in compliance with *Miranda v. Arizona*, and that Barnard made those statements voluntarily.

## A.    The Warrantless Search of Barnard's Residence

The Fourth Amendment proscribes "unreasonable searches and seizures." U.S. Const. amend. IV. A court determines a search's reasonableness "by assessing, on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which [the search] is needed for the promotion of legitimate government interests." *United States v. Knights*, 534 U.S. 112, 118-119 (2001). While this balancing "generally requires that a warrant be obtained upon a showing of probable cause before a residence may be searched," factors such as consent or probationary status of an individual resident may alter the balance. *United States v. Williams*, 417 F.3d 373, 376 (3d Cir. 2005); *cf. Scneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). A warrantless search pursuant to voluntarily given consent is reasonable. *Scneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). And, because a probationer's reasonable expectation of privacy is reduced, and the government's reasonable need to monitor that individual likewise increased, a warrantless search of a probationer's residence requires "no more than reasonable suspicion." *Williams*, 417 F.3d at 376 (citing *Knights*, 417 U.S. at 121). Reasonable suspicion exists where, under the totality of the circumstances, the "officer has a

6

particularized and objective basis for suspecting legal wrongdoing." *Id.* (internal citations omitted).

In this case, Pini and Latsko knew of Barnard's outstanding warrant for drug trafficking; they believed the sale to have been video-recorded; and they knew that Barnard's criminal history involved illegal drugs. (July Tr. 13; Sept. Tr. 13.) Given the totality of these circumstances, the court finds that the P&P officers performed a valid search of Barnard's room based upon a reasonable suspicion that evidence of his continued involvement with illicit drugs would be discovered.[5] Further, Barnard concedes, and the evidence demonstrates, that Richardson apparently resided at the house and that she consented to the search. (D.I. 38; *cf.* Sept. Tr. 69-70.) P&P officers believed that Richardson owned the home, (Sept. Tr. 29), and that Barnard had lived there less than two months. (Sept. Tr. 27 (Barnard's reporting his change of address to Latsko in early May 2006).) The court finds that the P&P officers acted in light of these and other pertinent facts. Thus, the court finds that, based upon the consent given by Richardson, a person with apparent authority over the residence, the search of the room was valid. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 187 (1990) (citing *United States v. Matlock*, 415 U.S. 164 (1974)) (warrantless search of residence upon consent of third party, whom police reasonably believe to possess common authority over premises, does not violate Fourth Amendment). Further, Barnard also concedes, and the evidence demonstrates, that he gave consent to Miller, Collins, and Santos to search of his room at 431 Howell Drive. (D.I. 38; *e.g.*, Sept. Tr. 64, 71.) The court accordingly finds that Barnard consented to the search by federal agents as well. *Cf. United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005) (citing *Schneckloth*

---

[5] Barnard argues that the P&P officers acted as a "stalking horse" for the federal agents, that the purpose of the administrative search was to serve as a "ruse" to enable those agents to end-run the Fourth Amendment. (D.I. 38.) But the Court of Appeals for the Third Circuit has squarely rejected this argument under circumstances such as those present in this case. *Williams*, 417 F.3d at 377-78 (citing *Knights*, 534 U.S. at 118-19). In *Williams*, the Third Circuit held that the underlying purpose of the probationary search does not inform the analysis and determination of the search's legitimacy. *Id.*

*v. Bustamante*, 412 U.S. 218, 235 (1973)) (consent must be voluntary, but need not be knowing or intelligent).

These findings, however, do not end the inquiry. This is so because Barnard argues that, while the administrative search for drugs and drug paraphernalia may have been permissible, and while he may have consented to the federal agents' search, the search exceeded the bounds of a permissible administrative search for drugs and drug paraphernalia or the consent he gave to the federal agents. (D.I. 38.) Barnard makes this assertion because he seeks suppression of what he describes as evidence that was not apparently contraband or related to the possession or trafficking of illegal drugs. In other words, Barnard complains that there was no basis for the seizure of any of the items removed from his room on June 14, 2006, because there was nothing inherently incriminating about any of them. (D.I. 38.) *See Horton v. California*, 496 U.S. 128, 141 (1990) (The Fourth Amendment permits officers to seize evidence that has come into their plain view when the search is otherwise lawful and the evidence's incriminating character is immediately apparent.).

The difficulty with this argument is its failure to recognize that the collective knowledge of the officers permissibly on the scene applies to a determination of whether the items that came into plain view during an otherwise legal search could readily be associated with criminal activity. *United States v. Menon*, 24 F.3d 550, 562-63 (3d Cir. 1994). In *Menon*, the Third Circuit held that a search and seizure of documents did not violate the Fourth Amendment when the searching officer was engaged in a permitted search of a desk for other documents, the seized documents came into that officer's plain view during the permitted search, and, using the collective knowledge of the officers on the scene, the seized documents' incriminating nature was immediately apparent. *Id.*, 24 F.3d at 563.

Here, the administrative search authority conferred upon the P&P officers, as well as the consent given by Barnard and Richardson to the federal agents, supports the finding that the search did not exceed constitutional boundaries. While the P&P officers permissibly looked in Barnard's room for drugs, drug paraphernalia, and other signs of criminal activity, the evidence at issue came into their plain view. Those officers then showed the evidence to Collins, an officer lawfully present in Barnard's room, and Collins realized its incriminating nature. (Sept. Tr. 55.) Miller and Collins both testified that the suspect named in the January 12 complaint and warrant used the nickname "Ross." Clearly then, letters addressed to that nickname in Barnard's possession had evidentiary significance to Collins. (Sept. Tr. 42, 54; D.I. 8.) Collins also recognized that the photographs were of Reesha Williams, the missing woman whom Barnard had acknowledged knowing and who, according to Barnard, had taken Barnard's car before her disappearance. (Sept. Tr. 38, 49-50.) Using the collective knowledge of officers permissibly on the scene, *United States v. Menon*, 24 F.3d 550, 562-63 (3d Cir. 1994), incriminating nature of the evidence was readily apparent. Accordingly, the court finds that the search and seizure of this evidence did not violate the Fourth Amendment.

## B.     Barnard's Statements

The Fifth Amendment prohibits the Government's use in its case-in-chief of a defendant's statements made as a result of custodial interrogation by law enforcement officers unless the defendant is first advised of, and waives, his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The Supreme Court has defined interrogation as "express questioning or its functional equivalent" beyond merely the custody itself. *Rhode Island v. Innis*, 446 U.S. 291, 299-302 (1980). The Fifth Amendment does not, however, bar an in-custody defendant's

statements that are volunteered. *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986).    The government bears the burden of proving that the defendant waived his *Miranda* rights, or that the defendant gave a statement voluntarily, by a preponderance of the evidence. *Connelly*, 479 U.S. at 169-170.

In this case, it is undisputed that Miller read *Miranda* warnings to Barnard from the standard DEA-13A card.  (*Cf.* D.I. 38 at 3-4 (defendant's proposed findings of fact).)  The Government adduced Miller and Collins' uncontroverted testimony that Miller provided Barnard with *Miranda* warnings by reading from Miller's DEA-13A card at the P&P office as well as in the patrol car outside Barnard's residence. (Sept. Tr. 36-37, 65-67.) The evidence further shows that Barnard acknowledged and waived his rights.  (*Id.*)  Based on the totality of the circumstances, including Barnard's calm and sober demeanor, his past experience with the criminal justice system, and the absence of threats or coercion, the court finds that Barnard understood these warnings and knowingly waived his rights.  (*Id.* at 36-38, 65-67.)  Barnard's later statements, including "Who set me up," are therefore not barred from admission at trial. (Sept. Tr. 36, 65.)

For the reasons stated above, the court will deny the defendant's motion to suppress.

Dated: February 6 , 2008

_____
CHIEF, UNITED STATES DISTRICT JUDGE

FILED

FEB - 6 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No.  06-73 GMS |
| | ) | |
| DION L. BARNARD, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1.     The defendant's Motion to Suppress Physical Evidence and Statements, (D.I. 23), is DENIED.

Dated: February 6 , 2008

CHIEF, UNITED STATES DISTRICT JUDGE

FILED

FEB - 6 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE