IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. 06-73-GMS |
| ) | |
| DION L. BARNARD, ) | |
| Defendant. ) | |

### GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE

**NOW COMES** the United States of America, by and through Colm F. Connolly, United States Attorney for the District of Delaware, and Shannon Thee Hanson and Lesley Wolf, Assistant United States Attorneys for the District of Delaware, and files this opposition to defendant Dion Barnard's ("Barnard") letter Motion in Limine and for its reasons states as follows:

On March 11, 2008, the government received a letter Motion in Limine ("Motion") via e-mail and facsimile, which was to be filed and docketed with the Court. On March 17, 2008, this letter was converted to a motion which was, in fact, docketed with the Court.

In that motion the defendant lists seven types of evidence he wishes to exclude from trial, asserting without argument that this information is "prejudicial evidence that is not relevant to the indictable charge in this case." Def.'s Motion at 1.[1] This Court's evidentiary rulings are

---

[1] The defendant indicates that Federal Rules of Evidence 402, 403, and 404 preclude introduction of this information at trial. He does not say why these rules preclude this information being introduced at trial. Def.'s Motion at 2.

reviewed for abuse of discretion, and will be upheld unless such a ruling is arbitrary or irrational. *See United States v. Williams*, 458 F.3d 312, 315 (3d Cir.2006). Each of the challenged categories of evidence will be addressed in turn.

(1) <u>Testimony and Documentation Regarding Risha Lewis</u>

As to this category of evidence, the defendant's motion is largely moot.

The government does not intend to offer evidence in its case-in-chief regarding Ms. Lewis, her disappearance, the content of any interviews or defendant's statements regarding Ms. Lewis, or the photographs of Ms. Lewis found in Mr. Barnard's room during the search warrant. However, the government does reserve the right to connect with the defendant the vehicle Ms. Lewis was driving at the time of her disappearance.[2] At the time of the January 12, 2006, crack cocaine sale, the agents knew the defendant only as "Ross." It took additional investigation to discover the defendant's true name and identity. To the extent that the investigative steps that led to discovery of the defendant's identity involve his possession of the car driven by Ms. Lewis, the government reserves the right to explain that step in the investigative chain to the jury. The government will not refer to Ms. Lewis's driving the car on the night of her disappearance or, in fact, refer to Ms. Lewis at all.

(2) <u>Car title for Lexis in names of Audrey and Luther Thompson</u>

As to this category of evidence, the defendant's motion is moot. The government does not intend to offer evidence in its case-in-chief regarding the Lexus car title in the Thompsons' name.

---

[2] It is government counsel's present understanding that the car Ms. Lewis was driving on the night she disappeared belonged to Mr. Barnard.

(3) $2,339.00 Seized From Defendant's Room During Search

As to this category of evidence, the government does not intend to offer evidence in its case-in-chief regarding U.S. currency found in the defendant's room during the search on June 14, 2006. The government reserves the right to use this information should the defendant testify.

(4) References To Informant Comments Regarding Defendant's Illegal Drug Sales After January 12, 2006

The defendant seeks to preclude "any and all references regarding informants' comments to Government Agents that Defendant Barnard had sold crack cocaine after the alleged sale on January 12, 2006." Def.'s Motion at 1. A DEA-6 provided to the defendant in discovery (bates labeled 00000005) refers to the fact that "During April 2006, TFO Collins was in contact with a confidential informant. The informant stated that he/she knew a subject that sold up to 9oz of crack cocaine, drove a white Honda Accord[3], and operated out of the Southbridge area. The subject was also said to be on probation." Government counsel is not certain that this is the comment the defendant seeks to exclude.

If this is the information the defendant seeks to exclude, then the motion is largely moot. The government does not intend to introduce in its case-in-chief informant information[4] that the defendant was known to sell up to 9 oz of crack cocaine (presumably at a time) nor that he operated (presumably his drug business) out of the Southbridge area as late as April 2006. Government reserves the right generally for Task Force Officer Larry Collins to explain that information obtained during the investigation linked the defendant to a white Honda Accord.

---

[3] The defendant arrived at the January 12, 2006, cocaine buy in a white Honda Accord.

[4] This information did not come from the Confidential Informant who purchased cocaine base from the defendant on January 12, 2006.

3

Moreover, the government reserves the right to introduce such evidence, in the appropriate circumstances, if the defendant testifies. *See, e.g., United States. v. Williams,* 472 F.3d 81 (3d Cir. 2007) (government reserved the right to use evidence [of prior drug convictions] on cross-examination if Williams testified).

(5) <u>Evidence of Defendant's Arrest at Office of Probation and Parole</u>

The defendant was arrested while meeting with his probation officer on June 14, 2006. Thereafter, the defendant's home was searched by Probation and Parole officers who showed items from the defendant's room to TFO Collins, who recognized their evidentiary value. *See* Docket Item ("D.I.") 40. These items, including correspondence addressed to "Ross," the name by which the Confidential Informant knew the defendant, will be introduced into evidence in the government's case-in-chief. In light of the introduction of the subsequent search of the defendant's home by Probation and Parole officers, the government does not see how the probative value of the arrest circumstances is substantially outweighed by the danger of unfair prejudice to the defendant, under F.R.E. 403. The jury will learn that items were seized from the defendant's home by Probation and Parole officers and that Drug Enforcement Administration ("DEA") officers were also involved in the arrest.

To the extent the defendant is claiming that introducing evidence of the defendant's arrest during a meeting with his Probation Officer implicates F.R.E. 404(b), this Court's decision on admissibility is governed by the following four-part test: "(1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the trial court must charge the jury to consider the evidence only for the limited purpose for which it is admitted." *United States v.*

*Sampson*, 980 F.2d 883, 886 (3d Cir.1992) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)). To "show a proper evidentiary purpose, the government must 'clearly articulate how that evidence fits into a chain of logical inferences without adverting to a mere propensity to commit crime now based on the commission of a crime then.'" *United States v. Cruz*, 326 F.3d 392, 395 (*quoting United States v. Mastrangelo*, 172 F.3d 288, 295 (3d Cir.1999)). *See also United States v. Shaheed*, 183 Fed. Appx. 168, 170 (3d Cir.2006) (non-precedential) (admission of defendant's probation status not abuse of discretion).

In the present case, the defendant was arrested while meeting with his probation officer. The location and circumstances of his arrest fit within the logical chain of events that leads to the search of the defendant's room by probation and parole officers. That search leads to evidence that ties the defendant with the nickname "Ross," which the Confidential Informant indicated was the name the man who sold him drugs on January 12, 2006 went by. A limiting instruction to the jury that they are not to consider the defendant's probationary status for any purpose other than the place and lawfulness of the arrest and subsequent search should cure any defendant concerns about the danger of unfair prejudice.

Of course, even if the Court should rule that the government cannot reference the location and circumstances of the defendant's arrest at the Office of Probation and Parole, the government would still reserve the right to question the defendant about his parole status at the time of his arrest should the defendant take the stand and open the door to such questioning by, for example, falsely testifying about his law-abiding behavior.

(6) <u>All Audio Recordings And Related Transcripts from January 12, 2006</u>

The government intends to introduce an audio recording (N-1) from January 12, 2006,

detailing the circumstances of the set up for and the defendant's sale of cocaine base to a Confidential Informant. This recording is clearly relevant under F.R.E. 401 and highly probative, as it documents the meeting wherein, the government maintains, the defendant sold cocaine base to the Confidential Informant.

The government intends to call Delaware State Police Trooper Pilot Donald R. Pope at trial to authenticate this recording. Trooper Pope was present during and set up the equipment for this recording and further monitored the recorded meeting between the Confidential Informant and the defendant from his position in the Confidential Informant's car via a Kel recorder. It is further government counsel's understanding that Trooper Pope will identify the defendant as the individual meeting with the Confidential Informant on January 12, 2006, for the cocaine base deal. *See United States v. Sanchez-Gonzalez*, 294 F.3d 563, 567 n.7 (3d. Cir. 2002) (*citing United States v. Starks*, 515 F.2d 112, 121 (3d Cir. 1975))

Defendant's voice on that tape recording is not hearsay. F.R.E. 801(d)(2)(A). Likewise, the Confidential Informant's statements are not offered for their truth, but rather are offered to place the defendant's statements in context. *United States v. Hendricks*, 395 F.3d 173, 184 (3d Cir. 2005) ("if a Defendant . . . makes statements as part of a reciprocal and integrated conversation with a government informant who later becomes unavailable for trial, the Confrontation Clause does not bar the introduction of the informant's portions of the conversation as are reasonably required to place the defendant or coconspirator's nontestimonial statements into context").

To the extent that the defendant challenges the quality of the tape recordings, this Court can hold a *Starks* hearing to determine whether they satisfy the evidentiary standards for

admissibility. *See, e.g., Starks*, 515 F.2d at 112; *United States v. Panzardi-Lespier,* 918 F.2d 313 (1st Cir. 1990) (after hearing where the court received the testimony of the task force agents regarding the surveillance of defendant, the general investigation [including chain of custody of the tapes], and testimony from expert who had enhanced recordings to eliminate background noises and further listened to tapes after the hearing, court ruled tapes authentic, substantially audible and trustworthy).

While the government does intend to use a transcript of the N-1 audio recording at the defendant's trial, this transcript has not yet been completed. Accordingly, the government respectfully requests that the Court delay ruling on the defendant's Motion in Limine insofar as it relates to a future transcript of N-1 as such a ruling is premature. The government and defendant may reach an agreement on the transcript once it is completed.

(7) All Video Recordings from January 12, 2006

Finally, the defendant challenges the introduction of "any and all evidence of video recordings allegedly of the Defendant taken on January 12, 2006 and photos [still photographs made from the video], as the subject figure is not recognizable and identifiable yet is highly suggestive and prejudicial."[5] Def.'s Motion at 2.

The government intends to introduce a videotape recording of the January 12, 2006, meeting between the Confidential Informant and the Defendant. This meeting was surveilled by Trooper Pope, Taskforce Officer Larry Collins, and DEA Special Agent Eric Miller. All three individuals will be called as witnesses at trial. Agent Miller was the video camera operator,

---

[5] The government acknowledges that the tape was being shot on a sunny day and, accordingly, the tape quality suffers, at times, from the effects of sun glare on the camera.

positioned in a surveillance car driven by TFO Collins across the parking lot from the meeting between the Confidential Informant and the defendant. Counsel expects that he will testify about that the videotape equipment was in good working order, and that the film/tape was not tampered with prior to the trial. Agent Miller will also testify about his prior experience as a videotape operator in similar surveillance situations.

Motion pictures and videotapes are admissible on the same basis as still photographs. *See* F.R.E. 1001(2) (defining photographs to include videotapes). Accordingly, the above information should lay a sufficient foundation to support a finding that the videotape is a fair and accurate representation of the subject matter depicted therein at the time the video was taken.

### III. CONCLUSION

WHEREFORE, for the foregoing reasons, the government respectfully submits that, at least in part, the defendant's motion is moot. Should the Court interpret the defendant's motion as requiring a *Starks* hearing with respect to the audio and video recordings, the government is available at the call of the Court.

                                      Respectfully submitted,

                                      COLM F. CONNOLLY
                                      United States Attorney

By:   s/Lesley F. Wolf
        Shannon T. Hanson
        Lesley F. Wolf
        Assistant United States Attorneys
        1007 N. Orange Street, Suite 700
        Wilmington, Delaware 19899
        (302) 573-6277 x128

Dated: March 17, 2008

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Cr. A. No. 06-73-GMS |
| : | |
| DION L. BARNARD, : | |
| : | |
| Defendant. : | |

**CERTIFICATE OF SERVICE**

    I, Shannon T. Hanson, employed with the Office of the United States Attorney for the District of Delaware, hereby certify that on the 17th day of March, 2008, I caused to be filed the Government's Opposition to Defendant's Motion In Limine with the Clerk of Court via CM/ECF. I further certify that a copy of the foregoing was sent, via electronic mail and First Class Mail postage pre-paid on March 17, 2008 to counsel of record as follows:

    Joseph A. Ratasiewicz, Esq.
    Front Street Lawyers
    2 W. Baltimore Avenue, Suite 320
    Media, PA 19063

    s/Lesley F. Wolf