IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>DION L. BARNARD, )<br>)<br>    Defendant. ) | Criminal Action No. 06-73 GMS |

**MEMORANDUM**

## I. INTRODUCTION

The Double Jeopardy Clause generally does not bar retrial after a criminal defendant moves for and is granted a mistrial – unless the prosecutor, seeking to subvert the protections of the Double Jeopardy Clause, intentionally goaded the defendant into moving for mistrial. During trial in this case, the government elicited testimony from a government witness that the defendant had a set of fingerprints on file with the FBI, thus suggesting that the defendant had a prior criminal record. Barnard then moved for a mistrial, which the court granted. Now before the court is Barnard's motion to dismiss the indictment.

## II. BACKGROUND

On June 27, 2006, the Grand Jury for the District of Delaware indicted Dion L. Barnard ("Barnard") for distribution of over fifty grams of cocaine base, in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(A). (D.I. 12, 13.) Trial began after jury selection on May 12, 2008.

During its case-in-chief, the government called Deputy United States Marshal Robert Henderson ("Henderson") as a witness to testify regarding how prisoners are processed after their arrest. Specifically, Henderson testified regarding the FBI's digital fingerprints database, the Integrated Automated Fingerprint Identification System ("AFIS"). He also testified that

1

Barnard has a unique FBI number in that database, such that upon Barnard's processing in the instant case, the system recognized him and his fingerprints.

Barnard objected to this testimony and moved for mistrial; the government opposed the motion. The court then heard argument on the issue, including the government's proposed curative instruction. After considering the parties' arguments, the court granted the motion without prejudice to the government's ability to retry the case, thereby allowing the parties to brief the issue.

On June 9, 2008, Barnard moved to dismiss the indictment on the ground that the Double Jeopardy Clause bars retrial. (D.I. 55.) Both parties have filed briefing on the motion. (D.I. 56, 59, 61.) The court will decide the motion as follows.

### III. DISCUSSION

Once a defendant has moved for mistrial, the general rule is that the defendant cannot then claim that the Double Jeopardy Clause bars retrial. *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982); *United States v. Williams*, 472 F.3d 81, 85-86 (3d Cir. 2007). This rule does not apply, however, when the prosecutor acted with the intent to subvert the protections afforded the defendant by the Double Jeopardy Clause. *Oregon v. Kennedy*, 456 U.S. at 675-76; *Williams*, 472 F.3d at 85-86. Thus, where the government intended to "goad the defense into moving for a mistrial," and the defendant obliged, a court may dismiss the indictment on Double Jeopardy grounds. To succeed on a motion to dismiss the indictment after having moved for a mistrial, the defendant must prove that the prosecutor's subjective intent was to cause a mistrial. *Williams*, 472 F.3d at 85-86.

While the Supreme Court in *Oregon v. Kennedy* did not enumerate specific factors to consider, lower courts have considered three factors when analyzing a motion to dismiss the indictment after a mistrial was granted: (1) whether the prosecutor had reason to think the

defendant may be acquitted; (2) whether the government would gain from mistrial; and (3) whether the prosecutor offered a "plausible justification" for the actions that lead to mistrial. *United States v. Archibald*, 2003 WL 561096 at *5 (E.D. Pa. Feb. 26, 2003) (citing *United States v. Curtis*, 683 F.2d 769, 777-78 (3d Cir. 1982)). The court will consider each of these factors, as well as the context of the prosecutor's conduct that led to the mistrial, in turn.

### A. Whether the Prosecutor Had Reason to Think That Barnard Would Be Acquitted

Barnard argues that the government had reason to expect Barnard's acquittal because Barnard had impeached the credibility of the government's witness who testified to buying the drugs from Barnard, during cross-examination. Further, Barnard claims, the government's identification of Barnard was put into question. Barnard certainly called the government witness's credibility into question at trial. But the government expected such impeachment, since it knew of the witness's proverbial "warts"– including the witness's criminal record and cooperation with the government – on which the impeachment relied. Moreover, the government had not yet presented the "plus" aspect of this identification-plus case: Barnard's fingerprints on the bags of cocaine base. Since the impeachment was expected, and since the government still expected to introduce incriminating fingerprint evidence in its case-in-chief, the court finds that the government did not have substantial reason to believe, based on proceedings to that point, that Barnard would be acquitted. This factor thus does not support a finding of the prosecutor's subjective intent to cause a mistrial.

### B. Whether the Government May Gain from a Mistrial

Barnard also argues that the government gained several advantages from the mistrial. Specifically, Barnard contends that the government learned the direction of Barnard's case, through previewing the cross-examination of four of the six government witnesses, and can now

refine witnesses' testimony and evidence already presented as well as, more generally, plug up holes in its case that became apparent during the first trial.

The government disputes each of these points. First, the government argues, its case-in-chief proceeded for the most part as expected. Barnard raised no novel issues on cross-examination. So the government did not gain significantly from previewing those examinations. With respect to witnesses and evidence, the government cannot eliminate Hammond's prior criminal record or his statements made under oath at the first trial. Nor can the government render the surveillance recordings presented at the first trial any clearer than they originally were. And as for Barnard's "plugging holes" argument, Barnard identifies no specific "holes" that had become apparent before the mistrial. (D.I. 59.) In addition, the court notes that a new trial disadvantages the government by costing additional time, money, and resources. As such, because the defense has failed to show evidence of the advantage that the government gained as a result of the mistrial, the court finds that this factor does not support Barnard's claim that the prosecutor's subjective intent was to cause a mistrial. *Cf. Curtis*, 683 F.2d at 777.

  C. **Whether the Government Offered a "Plausible Justification" for Its Actions Leading to Mistrial**

In addition, Barnard argues that the government offered no plausible justification for the prosecutor's actions, which revealed that Barnard has a set of fingerprints on file with the FBI and thus implied that Barnard had a prior criminal record. But the government, both at trial and in its briefs on this motion, gave credible reasons for its actions that led to mistrial. Specifically, the government explained that it needed to establish that Barnard's actual fingerprint, the fingerprint attributed to him in the database, and the latent fingerprints found on the cocaine base's packaging all matched. Lacking a witness who could testify with certainty to fingerprinting the defendant, the government sought to show that the defendant's fingerprints file

in the FBI computer system in fact belonged to the defendant by establishing foundation for how the system worked. According to the government, the prosecutor could not simply have asked Henderson to testify that he took Barnard's fingerprints because Henderson did not specifically remember doing so. Moreover, Henderson could not rely on computer records that attributed Barnard's processing to Henderson's unique computer log-in, since others may have logged into the computer system using his account. Thus, considering the government's need to establish that the latent fingerprints on the cocaine-base packaging matched Barnard's physical prints, as reflected in the database, and that Barnard had not stipulated to the fingerprint exemplar's authenticity, the court finds the prosecution's justification plausible. Thus, this factor, like the prior two, does not support Barnard's claim.

### D. Context of the Mistrial

Finally, the court considers the context of the prosecutor's conduct that gave rise to the mistrial. Here, the prosecutor engaged in the process of authenticating fingerprints, a task made more difficult because Henderson did not recall the particular booking, and because the computer system did not identify with certainty which particular officer processed Barnard after his arrest. The court did not perceive any subjective intent on behalf of the prosecutor to provoke Barnard into moving for mistrial at trial. (*See* D.I. 59 Ex. C at 9.) And it does not perceive such intent now, after reviewing the transcript and the parties' written submissions. What is more, the government credibly and strenuously opposed Barnard's motion for mistrial, proposing a curative instruction instead. In sum, the circumstances surrounding the prosecutor's actions in this case simply do not suggest a desire for mistrial.

### IV. CONCLUSION

For the reasons stated above, the court finds that the defendant has not established that the prosecutor's subjective intent was to subvert the protections of the Double Jeopardy Clause

by goading the defendant into moving for mistrial. *See Williams*, 472 F.3d at 85-87. The court will therefore deny the defendant's motion to dismiss the indictment.

Dated: July 10, 2008

CHIEF, UNITED STATES DISTRICT JUDGE

FILED

JUL 1 0 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. 06-73 GMS |
| ) | |
| DION L. BARNARD, ) | |
| ) | |
| Defendant. ) | |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendant's Motion to Dismiss the Indictment, (D.I. 55), is DENIED.

Dated: July 10, 2008

_____
CHIEF, UNITED STATES DISTRICT JUDGE

FILED
JUL 10 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE